IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHEILA ANN LAWSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO.<br>2:12-cv-2273-AKK |

## MEMORANDUM OPINION

Plaintiff Sheila Ann Lawson ("Lawson") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I. Procedural History

Lawson filed an application for Supplemental Security Income on July 15, 2009, alleging a disability onset date of September 28, 2007, due to anxiety and fibromyalgia. (R. 21, 125). After the SSA denied Lawson's claim, she requested a hearing before an ALJ. (R. 73-74). The ALJ subsequently denied Lawson's claim,

(R. 18-28), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Lawson then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of

the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

3

>  (5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Lawson had not engaged in substantial gainful activity since July 15, 2009, and, therefore, met Step One.  (R. 23).  Next, the ALJ found that Lawson satisfied Step Two because she suffered from the severe impairments of "Osteoarthritis, Depression, [and] Agoraphobia Without Panic" *Id*.  The ALJ then proceeded to the next step and found that Lawson failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 24).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Lawson

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except claimant must never be required to climb a ladder, rope or scaffold and should only frequently be required to climb a ramp or stairs, balance, crouch, stoop, kneel, crawl, reach overhead or otherwise, gross handle or use her fine finger or feel sensation with her non-dominant left arm, meaning no more than five hours of an eight hour workday.  The claimant should never be exposed to dangerous equipment or products.  It should also be taken into consideration that the claimant has a moderate limitation in her ability to work with supervisors, co-workers and the public in interpersonal interaction and discussion.  She is only able to stay on task for two hours and can only maintain attention to simple, repetitive tasks for two hours at a time.  She is also moderately limited in her ability to understand, remember and carry out simple instructions, respond appropriately to work pressures and adapt to changes in routine work settings.

(R. 25).  Lastly, in Step Five, the ALJ considered Lawson's age, education, work experience,[1] and RFC and determined "there are jobs that exist in significant numbers in the national economy that [Lawson] can perform."  (R. 27).  Therefore, the ALJ found that Lawson "has not been under a disability, as defined in the Social Security Act, since July 15, 2009, the date the application was filed."  (R. 28).

## V. Analysis

The court now turns to Lawson's contentions that the ALJ failed to (1) properly consider the opinions of medical sources; (2) support his RFC assessment with a medical source opinion; (3) adequately specify the degree of mental limitations in his RFC assessment; and (4) consider all of Lawson's impairments. *See* doc. 9 at 5-10.  The court addresses each contention in turn.

---

[1] As of the date of the ALJ's decision, Lawson was 51 years old and the ALJ found she had no past relevant work.  (R. 27).

      A.      <u>The ALJ properly considered the opinions of medical sources.</u>

Lawson contends the ALJ erred because he did not "report the clinical findings or even mention the consultative evaluation . . . when neurologist Dr. Victor Sung found diffuse points of tenderness in her muscles" and "diagnosed diffuse osteoarthritis of the knee, back and shoulders." Doc. 9 at 5. Contrary to Lawson's contention, although the ALJ did not refer to Dr. Sung by name, he in fact discussed her examination: "With regard to Claimant's osteoarthritis, there is documented medical evidence of osteoarthritic changes in her shoulder and knee joints and the residual functional capacity finding (RFC) has taken these joint problems into consideration (Exhibit 5F)."[2] Consistent with this statement, the ALJ found Lawson had the severe impairment of osteoarthritis, and included related restrictions in his RFC assessment. (R. 35, 25). Therefore, Lawson's contention is unavailing.

Lawson asserts also that the ALJ improperly relied on the physical RFC assessment completed by a nonmedical single decision maker (SDM). Doc. 9 at 6-7. However, nowhere in his decision does the ALJ mention the SDM's RFC, or indicate that he relied upon it to assess Lawson's RFC. To the contrary, the ALJ discussed other medical evidence of record, and stated that his physical RFC findings were "supported by the available medical evidence showing osteoarthritic changes in [Lawson's] shoulder and knee joints." (R. 26). Significantly, the ALJ's RFC finding

---

    [2] Exhibit 5F is Dr. Sung's consultative evaluation.

included limitations in reaching, handling, and fingering, whereas the SDM indicated no limitations in those areas. (R. 25, 344). Because there is no evidence that the ALJ relied on the opinion of the SDM, Lawson's contention is without merit.

Finally, Lawson suggests the ALJ gave little weight to the opinion of Lawson's consultative examiner, Dr. Jack Zaremba, because he was hired by Lawson's attorney. Doc. 9 at 6. In making this contention, Lawson ignores that the absence of a treating relationship is a significant factor in assessing the weight, if any, the ALJ should give to Dr. Zaremba's opinions. *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources . . . ."). In other words, the retention of Dr. Zaremba by Lawson's counsel is precisely why the ALJ observed that "since [Dr. Zaremba] was hired by [Lawson's] attorney, there is no longitudinal treatment history." (R. 26). Moreover, the ALJ also gave little weight to Dr. Zaremba's opinions because he was "the only physician in the record who gave the claimant a definitive diagnosis of fibromyalgia or who classified [Lawson's] mental status as 'severe and debilitating.'" (R. 26). Consequently, the ALJ found that Dr. Zaremba's "opinions are not consistent with the other physicians in the record." *See* 20 C.F.R. § 416.927(c)(4) (ALJ must consider whether the doctor's opinion is consistent with the record as a whole in assessing its weight); *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (ALJ "may reject the opinion of any

physician when the evidence supports a contrary conclusion."). Therefore, the ALJ properly considered Dr. Zarmeba's opinions and reasonably rejected them.

B.   The ALJ was not required to support his RFC assessment with a medical source opinion.

Lawson next contends the ALJ had no RFC from a medical source to rely on in assessing Lawson's physical RFC. Doc. 9 at 7. However, Lawson overlooks that the regulations and the law of this circuit do not impose such a requirement. Rather, the pertinent regulation provides that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

20 C.F.R. §§ 404.1527(d), 416.927(d). One of the specifically reserved examples is a claimant's RFC:

> Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Consequently, the Eleventh Circuit has recognized that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished). It has also found an ALJ's RFC finding can be supported by substantial evidence even without a medical source

8

statement in the record.  *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished) (rejected the claimant's argument "that without [the physician's] opinion, there [was] nothing in the record" to support the ALJ's RFC assessment).

      Here, the ALJ properly relied on the report of Dr. Sung, and other evidence to assess Lawson's RFC.  Because there was sufficient medical evidence to allow the ALJ to assess Lawson's physical RFC and determine whether she was disabled, the record was complete.  *See* 20 C.F.R. § 404.1513(e).  Consequently, no medical source opinion or other additional development was required, and the ALJ committed no reversible error.

C. <u>The ALJ adequately specified the degree of Lawson's mental limitations in his RFC assessment.</u>

      Next, relying on the ALJ's use of the term "moderate" in describing Lawson's mental restrictions, which Lawson argues is "applicable only to a consideration of mental impairments under the PRT [Psychiatric Review Technique]," Lawson asserts that the ALJ's RFC finding was "not specific enough to translate to quantifiable vocational restrictions in terms of frequency or extent." Doc. 9 at 9.  But Lawson overlooks that the ALJ explained to the VE that when using "moderate in non-exertional matters," he was using "the Agency definition of a slight, slight limitation in the area, but the individual's still able to function satisfactorily." (R. 55).  Significantly, in responding to the ALJ's hypothetical question, the VE explained that

"[m]oderate limitations . . . may impact work, but they would not prevent work in and of themselves." (R. 56). In addition, Lawson's counsel had the opportunity to question the VE as to the meaning of moderate, but failed to do so. Ultimately, Lawson has not shown that "moderate" has no meaning in the context used by the ALJ, and it is clear the VE understood the ALJ's intended meaning. Consequently Lawson's contention is without merit, and the ALJ committed no reversible error in using "moderate" to describe Lawson's limitations.

Lawson also makes the related argument that 20 C.F.R. § 416.945(c) requires a more detailed analysis than the PRT. However, a review of the ALJ's mental RFC findings shows that he assessed Lawson's abilities in areas listed in that regulation, namely "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting." *Id.* Consequently, the ALJ provided the detailed analysis required when assessing RFC.

### D. The ALJ did not err in failing to consider all of Lawson's impairments.

Finally, Lawson contends that the ALJ failed to consider Lawson's complete medical history, which "includ[ed] hypertension, bilateral ankle pain, calluses on soles bilaterally, hyperlipidemia, hypothyroidism, status left post [sic] foot fracture in December 2007 in a boot until March 2008, anemia, fatigue, hepatic cyst, [and] cervical lymphadenopathy." Doc. 9 at 9 (citations to record omitted). Unfortunately,

Lawson failed to identify any limitations caused by these medical conditions either at the time of her application for disability, (R. 125), or at her ALJ hearing. (R. 42-59). Therefore, the ALJ was under no obligation to investigate or consider limitations caused by those conditions. *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (unpublished) (observing that an ALJ is not required to investigate allegations "not presented at the time of the application for benefits and not offered at the hearing as a basis for disability") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). Because Lawson fails to point to any limitations caused by these conditions, and did not allege any restrictions from them at the administrative level, the ALJ committed no error in failing to discuss the conditions in his decision.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Lawson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** this 17th day of June, 2014.

_____
 **ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE